UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| WILLIAM F. MANCHESTER, | ) |
| Plaintiff, | ) |
| v. | ) Civil Action No. 96-0137 (JAR) |
| FEDERAL BUREAU OF INVESTIGATION, | ) |
| Defendant. | ) |

**MEMORANDUM OPINION**

Restani, J.[*]

This case arises under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552 (2000), and pertains to William F. Manchester's suit seeking disclosure of documents relating to the Federal Bureau of Investigation ("FBI") investigation of Manchester regarding his involvement in a heroin distribution organization and an attack on Robert Cutrufello. Before the court are the parties' cross-motions for summary judgment.[1] For the reasons set forth below, the court grants

---

[*] This case was initially filed with this court on January 29, 1996, but was reassigned on November 18, 2004, to the Honorable Jane A. Restani, Chief Judge, United States Court of International Trade, sitting by designation.

[1] In considering Manchester's cross-motion for summary judgment and opposition to the FBI's motion for summary judgment, the court relies on the Plaintiff's Reply to Defendant's Opposition to Cross-Motion for Summary Judgment and Plaintiff's Response to Motion for Order to Show Cause. The court does not have copies of the Plaintiff's Cross-Motion for Summary Judgment and Plaintiff's Opposition to Defendant's Motion for Summary Judgment, as they were never docketed with the court. Manchester has indicated that he wishes the court to decide this matter on their filed papers. See Letter from William F. Manchester (Dec. 9, 2004).

defendant's motion for summary judgment and denies plaintiff's motion for summary judgment.

## BACKGROUND

William F. Manchester was convicted in Delaware state court in November 1985 of attempted first degree murder, possession of a deadly weapon during the commission of a felony, and first degree conspiracy to commit murder in connection with an attack on Robert Cutrufello. He was sentenced to life imprisonment on April 21, 1986, and to five-year terms for each of the other charges. Since that time, Manchester has been involved in numerous FOIA requests and civil actions.

By letter dated December 4, 1992, Manchester submitted a FOIA request to the FBI headquarters and several FBI field offices for access to records related to himself and various individuals and entities involved in his arrest. By letter dated March 4, 1993, the FBI responded, in part, by invoking a Glomar response with respect to information concerning third parties for whom Manchester did not provide either proof of death or a notarized authorization.[2] With respect to the other requested information, the FBI released certain responsive documents related to Manchester, third parties for whom he provided proof of death or notarized authorizations, and certain subject matter. The FBI withheld three files identified by the FBI's Baltimore Field Office that concerned Manchester's prior FOIA requests and litigation ("Baltimore Litigation Files").

---

[2] "A Glomar response refuses to confirm or to deny the existence of any records." Hidalgo v. FBI, 344 F.3d 1256, 1259 n.6 (D.C. Cir. 2003) (quotations and citations omitted); see Phillippi v. CIA, 546 F.2d 1009, 1015 (D.C. Cir. 1976) (remanding case for further proceedings where the CIA refused to confirm or deny the existence of materials relating to a vessel called the Glomar Explorer).

Manchester commenced this lawsuit on January 29, 1996, alleging that the FBI improperly invoked the Glomar response and improperly invoked FOIA exemptions in withholding agency records. The district court granted the government's motion for summary judgment on November 8, 1996. On appeal, the FBI filed a motion for remand, recognizing that it overrelied on its Glomar response to Manchester's request for third party information. On December 4, 1997, the Court of Appeals granted the government's motion for remand.

On remand, Manchester agreed to narrow his FOIA request. By letters dated December 3, 1997, and December 17, 1997, the FBI proposed, and Manchester agreed, that the FBI would conduct indices searches of the Central Record Systems for the FBI headquarters and the FBI's Newark, Pittsburgh, Philadelphia, and Baltimore Field Offices for: (1) documents pertaining to third parties Robert Cutrufello, John D. Michael, Stephen Glenn Walls, and Richard D. Flynn; (2) documents pertaining to the subject matter "attack on Robert Cutrufello on November 4, 1984" and the subsequent investigation, prosecution, conviction and sentencing of Manchester, Michael, and Walls for the attack; and (3) documents pertaining to the subject matter "Pagan Motorcycle Club" and "Arclight/Pariah investigation," limited to information relating to Manchester, Cutrufello, Michael, and Walls. See Letters Regarding Scope of Search (Dec. 3, 1997, Dec. 15, 1997), Def.'s Mot. for Summary J. at Ex. 5. The FBI also agreed to produce three files identified by the FBI's Baltimore Field Office in response to Manchester's initial FOIA request.[3] Id.

---

[3] By letter dated November 11, 1998, Manchester sought production of files related to a civil action he filed in the United States District Court for the District of Columbia ("D.C. District Files"), as part of his request for the Baltimore Litigation Files. Def.'s Mot. for Summary J. at Ex. 9. Manchester asserted that he understood his agreement with the FBI to
(continued...)

With respect to the first three search requests, the FBI produced six pages of material facts from its files, with redactions, and withheld twenty-six pages in their entirety as exempt under 5 U.S.C. §§ 552(b)(7)(C) ("Exemption 7C"), 552(b)(7)(D) ("Exemption 7D"), and 5 U.S.C. § 552a(j)(2) of the Privacy Act.  See Declaration of Karlton Bolthouse (Dec. 14, 1998) ("Bolthouse Decl. II") at ¶ 4(a).  With respect to the Baltimore Litigation Files, the FBI found files consisting of 3010 pages and released 2900 pages, subject to withholdings under FOIA provision 5 U.S.C. §§ 552(b)(5) ("Exemption 5"), 552(b)(6) ("Exemption 6"), Exemption 7C, Exemption 7D, and various provisions of the Privacy Act.  See Declaration of Karlton Bolthouse (June 30, 1998) ("Bolthouse Decl. I") at ¶ 5(a).  On October 1, 1998, the FBI produced additional documents on "the '11/4/84 attack' on Robert Cutrufello," subject to withholdings under Exemption 7C and withheld a thirty-eight page Delaware State Police investigative report ("Delaware Police Report"), in its entirety, under Exemption 7D.[4]  See Letter from the FBI to Manchester (Oct. 1, 1998), Def's Motion for Summary Judgment at Ex. 8.  The FBI also informed Manchester that information related to third parties Michael, Walls, Flynn, and Cutrufello, would not be processed without proof of death or a privacy waiver.  Id.

---

[3](...continued) include these files.  Id.  The court finds that the FBI only agreed to produce "the three files identified by the FBI's Baltimore Field Office in response to Manchester's initial [FOIA] request . . . ."  Def's Motion for Summary Judgment at Ex. 5.  Since Manchester does not allege that the D.C. District Files were previously identified by the FBI's Baltimore Field Office, the FBI was not required, after complying with Manchester's revised FOIA request, to expand the agreement to accommodate Manchester's misunderstanding.

[4] Manchester asserts that the FBI released twenty-six pages in full and two partially redacted pages on April 10, 1999.  See Pl.'s Reply to Def.'s Opp'n at Ex. A.

**DISCUSSION**

The government moves for summary judgment in this FOIA case on the grounds that the FBI has conducted a reasonable search for records responsive to Manchester's FOIA request, and has released all recovered, responsive documents, excepting deletions made pursuant to specific FOIA exemptions. The district court may grant summary judgment for an agency only if the agency has shown that the evidence, when viewed in the light most favorable to the plaintiff, raises no genuine issue of material fact with regard to the agency's compliance with FOIA. Steinberg v. United States Dep't of Justice, 23 F.3d 548, 551 (D.C. Cir. 1994). The agency must prove that "each document that falls within the class requested either has been produced, is unidentifiable, or is wholly exempt from [FOIA's] inspection requirements." Nat'l Cable Television Ass'n, Inc. v. FCC, 479 F.2d 183, 186 (D.C. Cir. 1973).

Manchester alleges that the FBI is concealing documents that would establish the FBI's pattern of bad faith in handling the investigation into the Cutrufello attack and Manchester's subsequent conviction. Manchester asserts that the FBI continued this pattern of bad faith in conducting its search in response to his FOIA requests. Manchester also challenges the FBI's use of the Glomar response to address his requests for information on third parties unrelated to the attack on Cutrufello. For information acknowledged by the FBI, but not released, Manchester asserts that the FBI made no attempt to segregate exempt from non-exempt materials in its response to his FOIA requests or to provide justifications for its withholdings.

**I.     Adequacy of the Search**

In response to a FOIA request, the FBI is required to make "a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce

the information requested." Oglesby v. United States Dep't of the Army, 920 F.2d 57, 68 (D.C. Cir. 1990).  In reviewing the adequacy of the search, the court must determine "whether the search was reasonably calculated to discover the requested documents, not whether it actually uncovered every document extant." SafeCard Servs., Inc. v. SEC, 926 F.2d 1197, 1201 (D.C. Cir. 1991).  Affidavits and declarations may be used to show the reasonableness of a search, "as long as they are relatively detailed and nonconclusory and . . . submitted in good faith." Weisberg v. United States Dep't of Justice, 705 F.2d 1344, 1351 (D.C. Cir. 1983) (quotations and citations omitted).

In the instant case, the government submitted declarations of a special agent in the Washington D.C. field office, Bolthouse Decl. I and Bolthouse Decl. II [hereinafter collectively referred to as the "Bolthouse Declarations"], to illustrate the adequacy of the searches.  The search was limited to the subject matter areas agreed to by Manchester.  See Letters Regarding Scope of Search, Def.'s Mot. for Summary J. at Ex. 5.  The Bolthouse Declarations set forth the search terms and the type of searches performed, averring that all files likely to contain responsive materials were searched by subject matter in the electronic indexing system of the Central Record System.

Manchester attempts to rebut the adequacy of the search by alleging that the FBI conducted the search in bad faith in order to cover up its bad faith in conducting the investigation into the attack on Cutrufello.  Specifically, Manchester argues that the FBI is withholding a report detailing FBI Agent Hyden's hospital interview of Cutrufello.[5]  The court finds that the

---

[5] Manchester points to testimony by Cutrufello at an evidentiary hearing related to the criminal prosecution of John Michael in the Superior Court of the State of Delaware.  See
(continued...)

Bolthouse Declarations set forth adequate search methods in response to Manchester's FOIA requests.

"[T]he adequacy of a FOIA search is generally determined not by the fruits of the search, but by the appropriateness of the methods used to carry out the search." Duenas Iturralde v. Comptroller of the Currency, 315 F.3d 311, 315 (D.C. Cir. 2003). "[A]gency affidavits are accorded a presumption of good faith, which cannot be rebutted by purely speculative claims about the existence and discoverability of other documents." SafeCard, 926 F.2d at 1200 (quotations and citation omitted). Here, Manchester presents no specific evidence showing that the Bolthouse Declarations were submitted in bad faith. Moreover, the court finds that the FBI's failure to produce a report of the alleged Hyden – Cutrufello Interview does not make the search inadequate. See SafeCard, 926 F.2d at 1201 ("Mere speculation that as yet uncovered documents may exist does not undermine the finding that the agency conducted a reasonable search for them."). Accordingly, Manchester's speculative allegation as to the existence of one interview report does not cast doubt on the adequacy of the methods utilized in the FBI's search for responsive documents.

---

⁵(...continued)
Cutrufello Tr., Pl.'s Resp. to Mot. for Order to Show Cause at Ex. D.  Cutrufello testified that an FBI agent interviewed him while he was in the hospital and heavily medicated.  Id.  FBI Agent Hyden has stated, however, that he never prepared a report of his meeting with Cutrufello because Cutrufello was unresponsive to his interview request, either because he was uncooperative or medicated.  Manchester's allegation is entirely speculative because even if Hyden attempted to conduct an interview with Cutrufello, Manchester does not allege facts that would indicate that Hyden was able to obtain information to report.

**II.   Documents Withheld Pursuant to FOIA Exemptions**

An agency may withhold documents and parts of documents pursuant to nine enumerated statutory exemptions. See 5 U.S.C. § 552(b). FOIA requires that "non-exempt portions of a document must be disclosed unless they are inextricably intertwined with exempt portions." Kimberlin v. Dep't of Justice, 139 F.3d 944, 949 (D.C. Cir. 1998) (quotations and citations omitted). To enable the court to determine whether the documents are properly withheld, the agency must provide a Vaughn Index describing the withheld information. See generally Vaughn v. Rosen, 484 F.2d 820, 827-28 (D.C. Cir. 1973). The Vaughn Index "must adequately describe each withheld document, state which exemption the agency claims for each withheld document, and explain the exemption's relevance." Johnson v. Exec. Office for United States Attys., 310 F.3d 771, 774 (D.C. Cir. 2002). To satisfy the requirements of a Vaughn Index, the FBI provided the Bolthouse Declarations.

Manchester alleges that the FBI made no attempt to segregate exempt from non-exempt materials or to justify its withholdings on a page-by-page or document-by-document basis. The court disagrees, finding that the Bolthouse Declarations demonstrate that the FBI made extensive efforts to segregate exempt from non-exempt material. The FBI provided a comprehensive index of the withholdings, with categories of deleted materials and justifications for withholding information falling into each of the categories. Further, the FBI attached all of the partially redacted pages to the Bolthouse Declarations, with coded marks next to the deleted material corresponding to the index categories. Whenever a responsive page was withheld in its entirety, a deleted page sheet was substituted, identifying the number of the pages withheld, the location of the page within the file, the corresponding FOIA exemptions, and providing a specific

description of the information withheld. In short, "[a]ny more specificity would have entailed disclosure of the very information withheld." <u>Keys v. United States Dep't of Justice</u>, 830 F.2d 337, 350 (D.C. Cir. 1987).

Accordingly, the court finds that the Bolthouse Declarations, in conjunction with the coded attachments, show that the FBI adequately segregated exempt material and provided justifications for its withholdings. Having reviewed the government's <u>Vaughn</u> Index, the court addresses each of the claimed exemptions in turn.

### A.   Exemption 2 - Internal Personnel Rules and Practices

The FBI utilized Exemption 2 to withhold informant symbols and informant file numbers used as internal identifiers for administrative purposes. Exemption 2 protects matters "related solely to the internal personnel rules and practices of an agency." 5 U.S.C. § 552(b)(2). "[I]nformant codes plainly fall within the ambit of Exemption 2." <u>Lesar v. United States Dep't of Justice</u>, 636 F.2d 472, 485 (D.C. Cir. 1980). The court is satisfied that the FBI lawfully withheld informant symbols and file numbers pursuant to Exemption 2.

### B.   Exemption 5 - Inter-Agency Memoranda

The FBI relied on Exemption 5 to withhold portions of documents containing express opinions, draft writings, and pre-decisional recommendations of the trial and agency attorneys regarding the civil actions involving Manchester. The government argues that these documents are protected under the deliberative process privilege because they reflect the decision-making process of the government.

FOIA Exemption 5 permits an agency to withhold "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in

9

litigation with the agency." 5 U.S.C. § 552(b)(5). The purpose of the deliberative process component of Exemption 5 is to encourage the free and candid expression of ideas, advice, recommendation and opinions in the deliberative or policymaking processes. See Mead Data Cent., Inc. v. United States Dep't of the Air Force, 566 F.2d 242, 256 (D.C. Cir. 1977). In order to claim the privilege, the agency must show that the withheld material is (1) pre-decisional communication, and (2) deliberative. Jordan v. United States Dep't of Justice, 591 F.2d 753, 774 (D.C. Cir. 1978) (en banc).

The court finds that the government has satisfied these requirements. First, for each of the documents withheld under Exemption 5, the Bolthouse Declarations show that the withheld communications would reveal the agency's pre-decisional process in preparing for litigation. See Bolthouse Decl. I at ¶ 23; Bolthouse Decl. II at ¶ 40. Second, the withheld communications are deliberative because they reflect advice and recommendations completed for litigation. Id. Accordingly, the government lawfully withheld pre-decisional documents related to the government's deliberative process under Exemption 5.

### C.   Exemption 6 - Unwarranted Invasion of Personal Privacy

The FBI relied on Exemption 6 to withhold: (1) names, initials, and identifying data of FBI special agents and support personnel; (2) names, initials, and identifying data of third parties of investigative interest; (3) names and identifying data concerning third parties outside the scope of the plaintiff's request; and (4) names and identifying data of non-federal law enforcement officers. Bolthouse Decl. II at ¶ 35.

Exemption 6 permits an agency to withhold "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5

U.S.C. § 552(b)(6). To determine whether an invasion of privacy is unwarranted, the court balances third party privacy interests against public interest in the release of information. See United States Dep't of Justice v. Reporters Comm. for Freedom of the Press, 489 U.S. 749, 762 (1989). First, as to the third parties' privacy interests in this case, even "the mention of an individual's name in a law enforcement file will engender comment and speculation and carries a stigmatizing connotation." Branch v. FBI, 658 F. Supp. 205, 209 (D.D.C. Cir. 1987). Against this privacy interest, "the only relevant public interest in disclosure to be weighed in this balance is the extent to which disclosure would serve the core purpose of the FOIA, which is contributing significantly to public understanding of the operations or activities of the government." United States Dep't of Defense v. Federal Labor Relations Auth., 510 U.S. 487, 495 (1994) (quotations, citations, and emphasis omitted).

In the instant case, Manchester has not demonstrated, and the record does not show, that public disclosure of the requested personal information would shed any light on the operations of the government. Therefore, the court finds that the FBI lawfully applied Exemption 6 because the privacy interest in non-disclosure outweighs the public interest in disclosure.

    **D.**    **Glomar Response and Exemption 7C - Third Party Records**

Following remand, the FBI acknowledged the existence of records on third parties Michael, Walls, Flynn, and Cutrufello, limited to the events and facts surrounding the investigation of the attack on Robert Cutrufello. In all other respects, the FBI declined Manchester's requests for information regarding third parties, and declined to reveal whether or not such documents existed. With respect to the documents acknowledged, the FBI relied on Exemption 7C to withhold the following information: (1) names, initials, and identifying data of

FBI special agents and support personnel; (2) names and identifying data of third parties of investigative interest; (3) names and identifying data concerning third parties outside the scope of the plaintiff's request; (4) names and identifying data of non-federal law enforcement officers; and (5) file numbers of third parties.

The Privacy Act provides, in relevant part, that unless required by the FOIA, "[n]o agency shall disclose any record which is contained in a system of records by any means of communication to any person, or to another agency, except pursuant to a written request by, or with the prior written consent of, the individual to whom the record pertains . . . ."  5 U.S.C. § 552a(b) (2000).  In order to protect third party interests, an agency may provide a <u>Glomar</u> response, which neither denies nor affirms the existence of third party records.[6]  A <u>Glomar</u> response is "appropriate where members of the public may draw adverse inferences from the mere fact that an individual is mentioned in the investigative files of a criminal law-enforcement agency."  <u>Taylor v. United States Dep't of Justice</u>, 268 F. Supp. 2d 34, 38 (D.D.C. 2003) (quoting <u>Benavides v. Drug Enforcement Admin.</u>, 976 F.2d 751, 752 (D.C. Cir. 1992).

Here, the FBI chose to acknowledge the existence of records regarding third parties as they related to the attack on Cutrufello because this information has been publicly acknowledged. As to third party information outside the scope of the Cutrufello investigation, the record reflects that Manchester failed to show proof of death or provide privacy waivers with regard to

---

[6] The FBI follows a policy by which the agency refuses to confirm or deny the existence of third-party documents unless one of four conditions is met: "(1) the subject of the request is deceased; (2) the subject of the request has provided a notarized declaration authorizing the release of the requested information to the requestor; (3) the DOJ has officially acknowledged the existence of records pertaining to the third party in question; or (4) the public interest in disclosure outweighs the third parties' privacy interests."  <u>Burke v. United States Dep't of Justice</u>, No. 96-1739, 1999 U.S. Dist. LEXIS 17542, at * 4 (D.D.C. Sept. 30, 1999).

Cutrufello, Michael, Walls, and Flynn. Neither does he allege that information beyond the Cutrufello investigation has been publicly acknowledged. Finally, Manchester's general assertion of FBI impropriety does not show that disclosure of third party information will shed light on FBI wrongdoing.

For the information acknowledged by the FBI, Exemption 7C protects records compiled for law enforcement purposes whenever disclosure "could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C). As with the court's analysis of Exemption 6, the court balances third party privacy interests against the public interest in the release of information. Judicial Watch, Inc. v. Dep't of Justice, 365 F.3d 1108, 1125 (D.C. Cir. 2004) (noting that the privacy inquiry of Exemptions 6 and 7(C) are essentially the same, except the Supreme Court has construed Exemption 7(C) more broadly). The court finds, as in the Exemption 6 analysis, that Manchester fails to show a public interest that outweighs the third parties' privacy rights.

Manchester argues that disclosure of third party records will show that responsible officials acted negligently or otherwise improperly in the performance of their duties. In order to make such a showing, "the requester must establish more than a bare suspicion in order to obtain disclosure." Nat'l Archives & Records Admin. v. Favish, 541 U.S. 157, 174 (2004). "The requester must produce evidence that would warrant a belief by a reasonable person that the alleged Government impropriety might have occurred." Id. The court finds that Manchester failed to make a specific allegation that government impropriety occurred.

Next, Manchester challenges the FBI's withholding of information related to Detective

13

Flynn. Manchester claims that Flynn was identified as the author of the Delaware Police Report[7] in previous FOIA litigation. Manchester's claims reflect mere speculation that Flynn was the author of the report, based on the FBI's Answer to the Plaintiff's Complaint, in which the FBI admitted Flynn sometimes submitted reports to the FBI as a member of an FBI task-force. The fact that Manchester may have been able to piece together information that may point to Flynn does not diminish Flynn's privacy interest in not being definitively associated with a report. Taylor, 268 F. Supp. 2d at 38. Moreover, the court finds that even if the FBI released information indicating that Flynn was involved with a report, this does not diminish Flynn's privacy interest in not having the full details of any involvement with a report particular disclosed.

### E. Exemption 7D - Confidential Source Material

The FBI invokes Exemption 7D to justify its withholding of: (1) identities and information received from informants with the understanding that it would be held in confidence; (2) identities and information provided by third parties under an implied promise of confidentiality; (3) identities and information provided by non-federal law enforcement officers and/or agencies; and (4) informant file numbers or symbols.

Under Exemption 7D, an agency may withhold,

> records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information . . .could reasonably be expected to disclose the identity of a confidential source, including a State, local, or foreign agency or authority or any private institution which furnished information on a confidential basis, and, in the case of a record or information compiled by criminal law

---

[7] The FBI released twenty-six pages of the report in full, and two partially redacted pages, on April 20, 1999. See Pl.'s Reply to Def.'s Opp'n at Ex. A.

>enforcement authority in the course of a criminal investigation . . . ., information furnished by a confidential source.

5 U.S.C. § 552(b)(7)(D). A source is confidential if information was provided "with an understanding that the communication would remain confidential." United States Dep't of Justice v. Landano, 508 U.S. 165, 172 (1993). After reviewing the instances where the FBI withheld source information pursuant to Exemption 7D, the court concludes that Exemption 7D was lawfully applied. The withheld third party sources provided the FBI with information based on an understanding of confidentiality.

Manchester makes a specific challenge to the FBI's withholding of ten full pages of the Delaware Police Report, while twenty-six pages were released in full, and two pages were released in part. The FBI withheld this information on grounds of implied confidentiality between cooperating law enforcement agencies. Because there is no "distinction between individual and institutional sources of information . . . Congress intended generally to extend protection to whatever source of information the criminal law enforcement authority might employ during the course of an investigation." Lesar v. United States Dep't of Justice, 636 F.2d 472, 491 (D.C. Cir. 1980). The FBI is not entitled, however, to a "presumption that a source is confidential within the meaning of Exemption 7D whenever the source provides information to the FBI in the course of a criminal investigation." Landano, 508 U.S. at 181. A state investigative report is confidential when the state "provided information under an express assurance of confidentiality or in circumstances from which such an assurance could be reasonably inferred." Id. at 172.

Confidentiality of a state agency source can be reasonably inferred where the documents are "not accessible to the public absent authorization from the state law enforcement agency."

Putnam v. United States Dep't of Justice, 873 F. Supp. 705, 717 (D.D.C. 1995).  This implied confidentiality recognizes that "[s]tate and local law enforcement agencies frequently cooperate with federal law enforcement agencies on investigations, and state and local law enforcement agencies are encouraged to share information with federal authorities." Id.  In the instant case, the Delaware Police Report is not otherwise publicly available.  Moreover, Bolthouse avers that the state agency specifically directed that the report be withheld from release.  Bolthouse Decl. II at ¶ 78.  Therefore, the court finds that the state agency provided the FBI with the investigative report under an implied promise of confidentiality.

Manchester also challenges the use of Exemption 7D on the ground that the investigative report is publicly available.  Manchester has the burden of showing that there is "a permanent public record of the exact portions he wishes [to be disclosed]." Davis v. United States Dep't of Justice, 968 F.2d 1276, 1280 (D.C. Cir. 1992).  The government is obliged to disclose only the "exact information" revealed in public.  Dow Jones & Co. v. United States Dep't of Justice, 917 F.2d 571, 577 (D.C. Cir. 1990).  Therefore, Manchester is not entitled to the withheld sections of the Delaware Police Report because he fails to show that any of the withheld information is available anywhere in the permanent public record.

## CONCLUSION

For the foregoing reasons, the court grants the defendant's motion for summary judgment and denies the plaintiff's cross-motion for summary judgment.


Dated: August 9, 2005                                      /s/ Jane A. Restani
                               Jane A. Restani
                               Judge